May I please the court? This case is about the protection of the public revenue. When imports arrive at the border of the United States, U.S. Customs and Border Protection reviews the merchandise, and it must enforce the international trade laws of the United States. As they go about this process, they must ensure that the public revenue is protected to the maximum extent practical. That's their statutory obligation. That's a grandiose statement, but we have to look at statutes, right? Statutes reflect the protection of the revenue, and that's what we should be focusing on, right? Yes, Your Honor. And in this instance, the two measures that U.S. Customs and Border Protection took to protect the revenue was to suspend the liquidation of the entries at issue, and to require the posting of estimated duties for the potential anti-dumping and countervailing duty liability that could accrue at the end of the administrative proceedings. So in this instance, U.S. Customs and Border Protection executed its statutory obligations by suspending the liquidation and requiring the deposit of estimated duties. And the trial court's decision in this instance should be reversed for three reasons. First, Sunpreme, the importer, failed to exhaust its administrative remedies. When questions arise as to whether imported merchandise would be subject to a scope of an anti-dumping or a countervailing duty order, Congress has provided interested parties with a remedy, and that is to request a scope ruling from the U.S. Department of Commerce. If the interested party disagrees with the outcome of that scope ruling, they have rights before the trial court under subparagraph C of the trial court's jurisdiction statute. Was the Court of International Trade correct in concluding that it had jurisdiction in this case? No, Your Honor, it was not correct. It should have dismissed this is the lack of subject matters jurisdiction because Sunpreme will address 1581I. Certainly, Your Honor. 1581I is only available for purposes of jurisdiction when there is no other subparagraph of the trial court's jurisdictional statute available. And in this instance, Sunpreme had two alternative remedies that it could have pursued. One, it should have requested a scope ruling from the Department of Commerce at the outset of the dispute. And to the extent it had a disagreement with the outcome of that proceeding, it could have proceeded to the trial court under subparagraph C of the jurisdictional statute. Alternatively, it could have pursued the route before U.S. Customs and Border Protection and made an inquiry as to whether there has been a factual misapplication of the order. In that instance, it was required to allow Customs to complete its review, and upon the liquidation of the entries, it could have protested liquidations, which would have then Because Sunpreme has two alternative avenues for judicial review in this instance, either 1581A or C, the trial court erred in exercising jurisdiction under 1581I. And that is the first reason why we think the trial court's decision should be overturned. The second reason the trial court's decision should be overturned was the contested determination that was under review in this case was not final agency action. As again, as when goods approach the border of the United States, Customs must make an initial determination as to whether a countervailing duty order or an anti-dumping duty order should apply. As part of this initial determination, it suspended the entries and it requested deposit of estimated duties. However, that was not the end of Customs analysis. In fact, the record reflects that from the moment it required Sunpreme to enter its duties, it continued the conversation with Sunpreme all the way up until the time that the trial court enjoined the government from taking any action on these entries. The record, I can give you several examples where, in fact, Customs was actually testing the merchandise to ascertain the factual characteristics of the merchandise. And those lab reports are found at Appendix 211, 242, 700, and 824. These reflect that U.S. Customs and Border Protection had not completed its administrative processing of these entries. And therefore, the court should not have entertained judicial review under the residual jurisdiction. Was Customs engaged in a fact-finding investigation, correct, in trying to determine whether the imported goods fell under one of the exclusion provisions? It certainly engaged in a factual inquiry, yes, Your Honor. That's its statutory obligation. When goods reach the border, it must review the merchandise and make an initial determination. So what's an importer to do in that instance? Just turn around and walk away from it? Don't they have to respond to that and to respond to Customs and the information they're seeking? Certainly, Your Honor, and they can. They have two avenues of remedies, as we've previously discussed. Should there be a disagreement between Customs and the importer as to whether their goods should be subject to the scope of an order, the statutory remedy is to go request a scope ruling from Commerce. What if that inquiry that Customs mounted was itself improper or ultra-virus? There are certainly instances where that may occur, but the fact of this case did not reflect an instance where Customs... But in that situation, in those instances, then 1581I would apply, don't you think? No, Your Honor, because in those instances where Customs has exceeded its authority and executed a factional misapplication of an anti-dumping duty order, the importer... It seems like it engaged in its own scope ruling investigation. Quite to the contrary, Your Honor. In fact, in order for it to engage in that type of analysis, as Suncream had asked the agency to do, it would need to ascertain the meaning of thin-film photovoltaic products. That's the product that's identified by the exclusion. So in order to entertain the arguments that were put forward by Suncream, that in fact its goods fell within the exclusion, the importer was asking the agency to actually engage in that type of inquiry, to engage in this interpretive analysis as to what exactly falls within the exclusion. Well, that's because the importer had been required up to that time to post cash deposits. I mean, it's got money flowing out of its pocket. Certainly. Yes, Your Honor. It's got to respond to Customs, right? It does. Yes, Your Honor. But the remedy that that order then had... So in a situation like that, if Customs has exceeded its authority, if it's acting now like Commerce and Revenue, then doesn't that invoke 1581I? No, Your Honor. First, Customs didn't exceed its authority in this instance. It engaged purely in a factual application of the order. But secondarily, had it exceeded its authority... If we agree with you on jurisdiction, do we have to deal with whether Customs was acting within the scope of its authority? No, Your Honor. In fact, if you do agree with us on jurisdiction, then the case would be dismissed without reaching the merits, which is what the trial court did in this instance. In fact, the two main bases by which we seek the overturning of the trial court's decision in this case is that I jurisdiction was never appropriate because the importer had available remedies either under the scope proceedings and coming to the trial court under subparagraph C of the jurisdictional statute or waiting until Customs had finalized its administrative proceedings and protesting the liquidation of the entries and then coming to the trial court under 1581A. And then secondarily, as we've previously discussed, the claims are simply premature, which is another reason why 1581I should not stand. The trial court also erred in allocating the burden when questions arise as to scope onto the government. If importers are allowed to import merchandise into the United States without... And there's a dispute between the United States and the importer as to whether the goods should be subject to the scope of the order, and Customs is not required to take these protective measures, suspending liquidation and requiring cash deposits, then the interested parties, the importers, have every incentive never to request a scope ruling from the Department of Commerce because they can then bring their merchandise into the United States during that period without any sense of protection to the public fisc that would normally occur in that instance, which is another reason why the trial court erred in this instance. There's no further questions. I'll retain the reserve of my time for the rebuttal. You had asked to save two minutes for Ms. Gorsing. Is that correct? Or are you taking up a different issue or the same issue? Well, Mr. Miller has not left me too much to go over, but I did want to make one point on behalf of the domestic industry. And may it please the court, I'm Maureen Thorson of Wiley Ryan on behalf of Solar World. We agree with the government that in this case, the CIT should not have taken jurisdiction. In Sandvik, this court held that when a dispute arises between an importer and Customs over the meaning and reach of scope language, the importer's first remedy is with the agency that should be the referee in the first instance of the dispute. But from the point of view of the domestic industry here, we want to underscore- I wouldn't in a situation like this, if that's the case, why doesn't Customs tell the importer, look, we believe that you don't meet this exclusion. We believe you're included within the order. You ought to go get a scope review. But instead what they do is they initiate and what appears to me to be their own scope ruling investigation. Well, in fact, in this case, Customs did tell the importer, you need to go get a scope ruling on this. We'll continue to look at this if you want us to, and you keep giving us information and telling us that we should look at it. How can you tell Customs no? I mean, they have guns. Well, the point is that you're not telling Customs no, you're being required to pursue the administrative remedy that both Congress and Commerce have put forth for you, and that will shut Customs up if they're wrong. Wasn't there a separate scope review? There was, but they filed this lawsuit. Suncream filed this lawsuit before that scope ruling procedure before the Department of Commerce had concluded. They pursued two remedies. One incorrect in your view. Yes, one that was incorrect. Under Sandvik, they were required to get that scope ruling and then pursue judicial review through the means of that scope ruling if they were dissatisfied. And as the Sandvik court said, that both protects the Department of Commerce's statutory role and the court's from engaging in what could be an unnecessary extension of their resources as the importer may well find their remedy entirely in the administrative procedures. But beyond that, Judge Kelly below indicated that it was her view that the domestic industry could take up the importer's role here and ask for scope rulings whenever there was a dispute over a product. But the domestic industry is in a very poor position to do that. We as domestic industry members do not have access to import paperwork. We do not know what Customs conversations are with importers over the various products that might be coming through the border. We don't know what's going on. It is only when an importer brings a scope ruling to the Department of Commerce that domestic industry realistically has... Petitioners often bring scope rulings without involvement of the respondents or importers. Your Honor, I have not been terribly privy to scope rulings that haven't, even though I've been practicing for the domestic industry for many years, I have rarely seen a scope ruling that was brought by a domestic industry member. In general, scope rulings are requested by importers precisely because a disagreement has arisen. We're reviewing several cases now where the domestic industry brought the scope ruling. Yes, I don't doubt it. But at the same time, because we don't have any access to that import paperwork, we cannot, as the domestic industry, be put in the place of an importer who actually has a disagreement with Customs. But you have information about imports. You have information about imports that are coming in and you have a good idea of whether there's an attempt to circumvent the order. One of the issues for us is that we rarely have the identity of the importer. We often have fairly good information on the foreign producers that may be exporting goods to the United States, but very little information on who the importer might be. And without that information, practically speaking, it would be very difficult to bring a scope ruling procedure before Commerce because it wouldn't be clear who was the relevant parties that would be involved there. So our point is merely that Judge Kelly's opinion stands to negatively affect the way these orders are enforced by allowing importers to simply delay or forego rulings. If there's no further questions, I'll see the rest of my team. Okay. Thank you. Thank you, Ms. Harrison. Nancy Noonan. Thank you, Your Honor. I may please support Nancy Noonan on behalf of Sunprime. Let's start with the language of the order. Everyone agrees there is specific language to exclude thin film products. When we go to the petition that was originally filed, there was a specific language including this exclusion. So has been baked into this process from the get-go. In that petition, the domestic industry specifically said thin film products covered by industry certification under the standard of IEC 61646 are excluded. This is the industry certificate that Sunprime includes with all of its entries to say, hey, we have a thin film product. It's under the industry certification. We believe it's excluded. I understand where you're headed with this. I think you had a reasonable belief that you were excluded from the scope of the order. So when Customs sent you the letter and said, look, we think you're included and here's the information we need, why didn't you seek a scope ruling at that point? It is actually very common to have a dialogue with Customs at when those kind of questions come up and they often can be resolved. Why didn't you seek a scope ruling at that time? Because you know that Customs cannot issue a scope ruling. Correct, Your Honor. But our position was we had sufficient evidence, actually overwhelming evidence that our product met the thin film exclusion. So we had a dialogue with Customs. Hey, come to our facility, do a tour. At the end of the day, let's say Customs decides in your favor, somebody else can come along and seek a scope ruling and Commerce can overrule Customs. That's absolutely correct, Your Honor. If you really want protection, you really believe in your position that you're excluded, why didn't you seek a scope ruling from the outset? Because we believed that Customs would agree with us and even if there was a scope ruling, our product would be found to be outside the scope. And therefore, why should a small company, a startup company, put in hundreds of thousands of dollars into a scope ruling when we felt very justified in the position that the product was out? Who sought the scope ruling? Someone did. So yes, because of the dialogue with Customs, we certainly did become concerned that, gee, maybe there is a different interpretation to this language that we didn't see it, but clearly Customs does. So yes, we absolutely did go in. So therefore, this case at this point- So maybe that's your remedy. That's the remedy that you eventually exhausted rather than this one. Well, but under the scope regulations, Your Honor, when Commerce agrees that, hey, this is a tricky issue, it's an ambiguous scope, we're going to initiate the scope inquiry. That is when deposits potentially attach. That is when suspension of liquidation potentially attaches. Even then, so it can be back to the date of initiation of the scope inquiry. What we're looking at is everything that Customs did that we believe exceeded their authority prior to the date of initiation of that scope inquiry. We completely acknowledge that at this suspension of liquidation and deposits as of the date of initiation of that scope inquiry, which was December 30th. It seems like most of the basis of your complaint, the hardship that the inquiry went through was of its own making. You could have, instead of engaging in this very long, expensive conversation with Customs, just by filing your own scope request, you could have preserved the period in time at which suspension of liquidation starts. You could have resolved the question about deposits of cash deposits, and we wouldn't be here today. Well, first of all, Your Honor, this particular scope really took over eight months and thousands of pages of documents. You would have gotten all your money back, plus interest. Well, unfortunately, we haven't gotten any money back, Your Honor, because the product was found to be within the scope. Again, what we're looking at now is did Customs exceed its authority in looking at ambiguous scope language, taking on Commerce's role in interpreting that scope language? That's just it. You asked Customs to engage in this, and you participated in this whole procedure that you now claim was an illegal procedure. No, Your Honor. Customs forced it. They filed a notice of action saying, if you want these products to be released, you have to pay these deposits. You have to change your entry to 03 instead of 01. Again, this is a normal dialogue, and this is the way the process should work. There should be a dialogue with Customs. Please allow us to provide some more information to you to show you why we are within this exclusion. This is just the way the process occurs, and it is usually the most cost-effective for the government and for the parties because usually you can provide the information that Customs agrees with you. In this case, they did not. Therefore, we did go in for the scope ruling. But again, Customs can't have unfettered discretion to just say that, yeah, we agree. Customs concedes that this is a thin film product with amorphous is still in. That is beyond the scope of their authority. That is Commerce's duty, and Suncream did go to Commerce to get that scope ruling. We did use the right administrative remedy for that, but what we're trying to do now is there has to be some boundaries on Customs authority at the border when you're dealing with an ambiguous scope, such as what the Court of CBP says. In this case, CBP lacked the authority to require Suncream to enter its merchandise as subject to the orders because CBP's determination depended upon an interpretation of the scope language. Therefore, CBP's collection of cash deposits and suspension of liquidation before Commerce interpreted the orders to include Suncream's merchandise was contrary to law. Just to touch on whether there was actually final agency action here to trigger I-Jurisdiction, it's our position that when Customs decided that the product had to be changed from an O-1 entry to O-3, meaning subject to the anti-dumping and countervailing duty orders, that then changed Customs' role entirely to a ministerial role. Customs has no authority at that point, no discretion, no decision-making authority as to how it will eventually liquidate those entries. It has to follow the rules that Commerce issues. In that case, we believe we did have final agency action. The final agency action was if you want these products to come into the U.S., you must enter at O-3, you must deposit millions of dollars of duties, and therefore, that was final agency action. Was the scope review pending at that time? No, Your Honor. It wasn't filed until mid-November. This was all happening between mid-April to when the back and forth was going with Customs. I would like to also add I-Jurisdiction is available when the other remedies are manifestly inadequate. In this case, we did have a company that relied very heavily on this particular product, which it certainly in good faith believed was outside the scope. Again, I point to our industry certification that it was a thin film product that met the exclusion standards. Therefore, the company really had all of its eggs in the basket of this product. As it was being required to pay the deposits, which of course it was paying because it needed to bring the goods in in order to satisfy its customers, the company became in financial distress, which was one of the reasons why the Court of Financial Trade did issue a temporary restraining order and ultimately a preliminary injunction to stop the collection of cash deposits. Liquidation was still suspended and that was something we agreed with. Sure, let's continue suspension of liquidation, but please don't make the company pay these burdensome cash deposits because we think Customs has acted outside the scope of its authority. Well, if the Court doesn't have any further questions, I think that covers everything I wanted to cover. No questions? Okay, thank you, Mr. Miller. The arguments raised by my colleague reflect precisely the basis why the trial court erred in entertaining jurisdiction here. The arguments regarding the industry certification go to ultimately a scope decision, a scope ruling. To the extent that Suncream disagreed with initial determination to protect the public revenue by suspending liquidation of the entries and requiring the deposit of estimated duties, it should have immediately at that moment gone to commerce and requested a scope ruling. In response to Judge Rainer's comment about mitigating harm, you're precisely correct. At that exact moment in April of 2015, when Suncream became aware that there was this legitimate dispute between the United States and themselves as to whether their merchandise is covered, at that moment, they should have gone and requested a scope ruling. In fact, U.S. Customs and Border Protection did orally advise Suncream to take such action. Now, importers in these circumstances have two routes, two remedies available to them. They can seek that scope ruling right at the outset, get an ultimate resolution of their issue, and then proceed to the trial court under a subparagraph C, or if they choose to engage with Customs and continue in this conversation, they're free to do so. And ultimately, at the end of that process, Customs will liquidate their entry, and at that moment, they can protest the liquidation and again come to the trial court under subparagraph A. And because there are these two alternative approaches to the trial court, it was an error for the trial court to exercise jurisdiction under 1589. You're not saying it's prohibited for the importer to try and work things out? Not at all, Your Honor. Not at all. It's up to their election. For starting this elaborate and expensive process. It is up to their election. You're exactly correct, Your Honor. They can pursue either. It happened here, is it? Exactly what they did, but they prematurely sued Customs in the trial court. If they wanted to pursue their remedies before Customs, they should have waited until that dialogue had been completed and Customs liquidated the entry. The Kempsall case issued by this court reflects this exact framework, that until the administrative process before Customs is complete, which is consummated with the liquidation of the entry, the claims simply are not ripe for the trial court to review. Let's not forget, Commerce, the actual agency that Congress has imparted this authority to issue scope rulings, found the merchandise to be within scope. On judicial review, the trial court affirmed Commerce's determination. That's in a separate case that's pending before the trial court. If the trial court's holding in this case is left to stand, then that entire period of time, from the moment that this legitimate dispute arose in April of 2015, to the time the trial court enjoined U.S. Customs and Border Protection, the public fisc will be completely unprotected, and all of the duties that were rightfully owed to the United States during that period of time, the ultimate affirmative scope ruling will be left uncollected. And that's simply contrary to the statutory framework envisioned by Congress, where Customs is required under statute to protect the revenue to the maximum extent practicable. There's no other questions. I see my time is up. Okay. Thank you. Ms. Soshen, you have one minute. Okay. Good. Thank you, Your Honors. I just wanted to note Suncream here, both in its briefs and in this oral argument, concedes the scope language here is ambiguous. It is not perfectly clear. That puts us squarely in Sandvik territory. Having admitted that the scope is ambiguous, a scope ruling is exactly what Suncream should have sought immediately upon being advised. When they were advised by Customs to do so, certainly, but recognizing that there was an actual ambiguity and a dispute between themselves and Customs as to the meaning and reach of this language, they should have gone immediately for a scope ruling. That's their administrative remedy as this Court held in Sandvik. And again, we as a domestic industry believe that the Sandvik Court was correct in that it has not just created a system that works under the statute and recognizes the authority and separate spheres of the courts, the agencies, and conserves their resources, but it leads to the overall efficient administration of the trade laws in a way that recognizes the ultimate aim of those trade laws, which is to ensure that duties are, in fact, collected on goods that have been found to injure domestic industries. Thank you. Thank you all. The case is taken under submission.